[No. 2827.]

## Vince Johnson *v.* The State.

1. **Practice—Sentence.**—Article 792 of the Code of Criminal Procedure provides that "A sentence is the order of the court, made in presence of the defendant, and entered of record, pronouncing the judgment and ordering the same to be carried into execution in the manner prescribed by law." It is not required that the sentence should show that the defendant was asked, before it was pronounced, if he had anything to say why it should not be passed; and the failure of the record to show that fact is not reversable error. This court presumes, in the absence of any statute requiring the record to make such affirmative showing, that the trial judge complied with the provisions of Article 798 of the Code of Criminal Procedure.

2. **Same.**—To authorize reversal of a conviction for non-compliance with article 798 of the Code of Criminal Procedure, it must appear, by proper bill of exceptions, that the trial judge refused to ask the defendant if he had aught to say why sentence should not be pronounced, and deprived him of his legal right to be heard in bar thereof.

3. **Assault—Charge of the Court—Case Approved.**—See the case *in extenso* for an approval of a charge of the court in *Higginbotham's* case, 23 Texas, 575, defining the elements of an assault.

4. **Practice.—Arrest of Judgment** can be granted, upon motion, "only upon such grounds as would be good upon exceptions to an indictment or information for any substantial defect therein;" and hence, that the clerk of the District Court, who officiated on the trial, was not the district clerk *de jure*, was not an objection good upon motion in arrest of judgment.

5. **Same.**—The authority of a district clerk *de facto* cannot be questioned in a collateral way, as, for instance, in a motion in arrest of judgment.

6. **Assault with Intent to Murder—Fact Case.**—See evidence held sufficient to sustain a conviction for assault with intent to murder.

Appeal from the District Court of Bell. Tried below before the Hon. B. W. Rimes.

The indictment charged the appellant with an assault with intent to murder Jack Hamilton. The offense was alleged to have been committed on January 17, 1883, and the venue was laid in Bell county. The trial resulted in the conviction of the defendant, and his punishment was assessed at a term of four years in the penitentiary.

Jack Hamilton was the first witness for the prosecution. He testified that about the seventeenth day of January, 1883, he attended a party, by invitation, at the house of Bob Moore, about a mile and a half distant from Belton. Ten cents a set was the price levied for dancing, and this amount the witness paid for the privilege of joining the first set. While endeavoring to secure a partner, the defendant asked the witness if he intended to dance there, and the witness replied that such was his intention if he succeeded in securing a partner. The defendant remarked to the witness: "No, you won't dance." Witness replied: "I have paid for my place on the floor, and as soon as I get a partner I will dance here." Witness paid but little attention to the defendant, with whom he had always been on friendly terms, and did not know what he said in reply. The witness, however, failed to secure a partner, and did not join in that first set.

When the next set was called the witness had obtained a partner and started to take his place on the floor. Defendant then said to witness: "If you dance here to-night you will dance a dead nigger." Witness replied: "I will dance," and defendant retorted: "If you do, I will fix you." Thereupon the defendant ran to a gun standing behind a cupboard, and took it up. As soon as the witness saw what he was attempting to do, he, witness, sprang after the defendant and caught the gun by the barrel and held the muzzle up. Four or five other parties then interfered, and attempted to wrest the gun from the defendant. The party scuffled over the floor for some time, and finally out of the door into the yard, where, after a struggle, the defendant was disarmed. John Estes then discharged both barrels of the gun, whereat the defendant cursed and swore for some time. He made no attempt at this time to strike the witness, nor was the witness in any way hurt during the difficulty. Witness did not know where the defendant went after he was disarmed.

Some time after this difficulty, the defendant came to the witness in a saloon in Belton, and asked him if he, witness, had had him indicted, saying that if the witness had, he intended to

whip the witness. Witness testified against the defendant in the County Court for carrying the gun into Bob Moore's house while the party was going on. Witness made no effort to strike the defendant, but did try to prevent the defendant from shooting him, witness.

Bob Moore testified, for the State, that he gave a party at his house on the night of January 17, 1883, and that the defendant and Jack Hamilton, among others, were present. Defendant arrived first, bringing a double-barreled shot gun with him, the stock under his arm and the muzzle pointing towards the ground. He passed through the main room, where the people were gathered, and put the gun in a back room. He then returned to the main room and danced a set or two. Witness then observed Jack Hamilton trying to get a partner, and heard the defendant objecting to his dancing. Defendant was cursing and swearing that Hamilton should not dance. Hamilton asserted that he would. Defendant responded finally that "this d——d party had gone on long enough, and I am going to burst it up," and went into the back room and got his gun, returned and put his gun behind a cupboard in the main room. When he first came back with his gun the witness thought the defendant was going to leave. Standing within a foot of his gun, defendant said to Jack Hamilton: "You can't dance." Hamilton replied: "I have paid my money and I am going to dance." Defendant then said: "One of us will go to hell, then," and reached and got his gun. As he raised his gun and turned around with it, Jack Hamilton caught the barrel near the muzzle, and held the muzzle up. Defendant struggled to get the gun down, but Hamilton held on until four or five others interfered, when the party scuffled out of the door, into the yard, and at last the gun was taken away from defendant. John Estes discharged both barrels, whereat defendant said to him: "G—d d—n your soul, if I had another load I would shoot your heart out." When defendant grabbed at his gun there was a general rush for the door. The room was full of women and children, some of whom in all probability would have been killed had the defendant discharged his gun in the room. Quiet was restored after the gun was discharged, and the party went on.

The testimony of Dick Kelton, who was present at the party, was substantially the same as that of Hamilton and Moore. He stated that Hamilton wanted to dance in a particular place,

when the defendant first objected. The defendant brought two girls and the gun to the party with him.

Among a number of grounds for new trial, the defendant assigned in his motion those discussed in the opinion.

*Boyd & Holman* for the appellant: The eighth paragraph of the court's charge to the jury is certainly on the weight of evidence, and at the same time goes out of the record in charging the gun to be a deadly weapon, when there was no proof that the gun was a deadly weapon.

The court says, if the jury believe that the defendant grasped the gun with the "determined" intention of murdering said Hamilton, to find him guilty. Is there not too much stress expressed by the use of that word "determined"? It certainly had its weight with the jury.

A new trial should have been granted appellant, as there was not sufficient evidence to support the judgment. If the appellant intended to kill, and had the "determined intention" to kill as charged by the court, he had an opportunity to have done so after the gun had been discharged, as the parties remained there and the dance went on. The reaching for the gun was not such an act that the jury could infer that appellant had the "determined intention to kill." If so, then the Supreme Court must have committed a great error in reversing *Johnson* v. *The State*, 43 Texas, 576; *McKay* v. *The State*, 44 Texas, 43; and this Court in reversing *Gillespie* v. *The State*, 13 Texas Court of Appeals, 415.

The court below, in the thirteenth paragraph of the charge, copied the language of the Supreme Court in the case of *Higginbotham* v. *The State*, 23 Texas, 574; and the Supreme Court in that case say that the jury could have found the defendant not guilty, and that the circumstances amounted to an assault, but not certainly an assault with an intent to kill and murder. The case of *Johnson* v. *The State*, 43 Texas, 576, is almost a parallel, though a much stronger case than the one at bar, and the Supreme Court, in reversing that case, cited the case of Higginbotham with approval.

The motion in arrest of judgment should have been sustained for the reasons set out in the motion, that R. H. Turner was elected clerk of the District Court of Bell county, Texas, on the first Tuesday in November, 1882, and on the second day of December, 1882, took the official oath and gave bond as such dis-

trict clerk, and entered on the duties of his office. That afterwards, to wit, on the second day of December, 1882, he was appointed deputy county clerk by W. W. Upshaw, clerk of the County Court of Bell county, took the required oath as such deputy, and entered on the duties of such deputy county clerk, thereby vacating the office of district clerk.

Article 40 of the Constitution of the State of Texas declares that "no person shall hold or exercise at the same time more than one civil office of emolument," etc. Can it be held that the deputy county clerk is not the holding or exercising the duties of an office? Counsel think not. Then the office of district clerk becomes vacant by reason of the district clerk having assumed the office of deputy county clerk with its duties. There was no legal trial:

1. Because the indictment was not legally filed.

2. Because the oath administered to the jury by R. H. Turner was not legally or morally binding, and there was no trial.

*Walton & Hill,* also for the appellant: Defendant was not asked why judgment should not be pronounced against him, so far as the record discloses.

*J. H. Burts,* Assistant Attorney General, for the State.

Willson, Judge. Counsel for appellant call the attention of the court to the fact that the record fails to show that, before sentence was pronounced, the defendant was asked whether he had anything to say, etc., and insist that this omission is fatal to the conviction. Article 798 of the Code of Criminal Procedure is relied upon in support of this proposition. That article is as follows: "Before pronouncing sentence in a case of felony, the defendant shall be asked whether he has anything to say why the sentence should not be pronounced against him." There is no provision of the law which requires that it shall be anywhere recited in the record that this article has been complied with. It is not like the case of an omission in the record to show that the defendant had pleaded in the case; because the statute expressly requires that the plea of guilty and the plea of not guilty shall be entered of record on the minutes of the court. (Code Crim. Proc., Art. 538.) And, furthermore, the plea of the defendant is made a part of the judgment entry in the case. (Code Crim. Proc., Art. 791.)

Article 792 of the Code of Criminal Procedure defines a sentence as follows: "A sentence is the order of the court, made in presence of the defendant, and entered of record, pronouncing the judgment and ordering the same to be carried into execution in the manner prescribed by law." It is not required that the sentence shall show that before it was pronounced the defendant was asked if he had anything to say why it should not be pronounced. It would be more formal and more in accordance with the general practice if it contained such recital, but there is nothing in the law which would authorize us in holding that the omission from the record of this formality is error sufficient to set aside the sentence. We think in such case we are required to presume that the trial court complied with the law, and asked the defendant the statutory question. If a case should arise wherein a defendant had been refused by the court the privilege of the question, and the right to answer it in a legal manner, and such action of the court was presented to us by proper bill of exceptions, we would undoubtedly set aside the sentence, and accord to the defendant his legal right to be heard in bar thereof. But where such a state of case is not presented, we will presume that the trial court has obeyed the directions of the law in pronouncing the sentence.

While the charge of the court is in some respects perhaps not strictly accurate, still, we think, as a whole it is a fair and substantially correct presentation of the law applicable to the case, and contains no material error. In explaining the law as to the elements of an assault it follows the parallel case of *Higginbotham* v. *The State,* 23 Texas, 575, in which the acts constituting the assault were very similar to the acts proved in this case. In that case it is said: "The law has not established as a criterion in determining an attempt, that the gun must be presented, or aimed, or the lock pulled back, or triggers of a rifle sprung, or any other stage in the series of acts that may be performed in committing an assault. It is sufficient that there be an act done indicating an intention to commit a battery immediately, coupled with the ability to do it." We think the facts of this case show such acts on the part of the defendant as constituted an assault within the meaning of the law.

It is contended by appellant's counsel that the proceedings in this case are illegal and void because R. H. Turner, who purports to be the clerk of the District Court of Bell county, was not such clerk *de jure,* because he had vacated said office by

accepting an appointment as deputy clerk of the County Court of said county. This question was presented to the court in a motion in arrest of judgment, which motion was overruled.

It is provided that, "A motion in arrest of judgment shall be granted upon any ground which would be good upon exceptions to an indictment or information for any substantial defect therein." (Code Crim. Proc., Art. 787.) By reference to Article 528, Code Criminal Procedure, it will be found that there is no exception allowed to the substance of an indictment except such as are in that article specified. It is clear, therefore, that the ground of the motion in arrest in this case is not one allowed by the statute, and the court did not err in overruling the motion. Furthermore, we think it was not competent, in a collateral way, to question the authority of Turner to perform the duties of clerk of the District Court. He was such clerk *de facto,* if not *de jure,* and his acts as such, in this case, were valid.

We have discovered no error for which the judgment of conviction should be set aside, and it is therefore affirmed.

*Affirmed.*

Opinion delivered May 30, 1883.